AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| | |
|---|---|
| United States of America<br>v.<br><br>CHRISTOPHER BARR IV<br><br>*Defendant(s)* | Case No.<br>3:25-mj-1432-MCR |

FILED IN OPEN COURT
JACKSONVILLE, FLORIDA

9.10.2025

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of **September 9, 2025** in the county of **Duval** in the
**Middle** District of **Florida**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Knowingly possessing a firearm while being a convicted felon |

This criminal complaint is based on these facts:

See Affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Christian Van Kleeff, Special Agent, ATF
_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 9/10/25

_____
*Judge's signature*

City and state: Jacksonville, Florida    Monte C. Richardson, United States Magistrate Judge
_____
*Printed name and title*

# AFFIDAVIT IN SUPPORT
# OF A CRIMINAL COMPLAINT

I, Christian Van Kleeff, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) and have been since December 2023. I am currently assigned to the Boston Field Division. I am a graduate of the Federal Law Enforcement Training Center, where I completed ATF Special Agent Basic Training and the Criminal Investigator Training Program. Prior to my employment with ATF, I worked as a civil engineer in Massachusetts for approximately three years. I am a graduate of the University of Massachusetts Amherst, where I received a Bachelor of Science in Civil & Environmental Engineering in 2020.

2. During my time as an ATF Special Agent, I have participated in a number of investigations involving federal firearms violations. Based on my training, knowledge, and experience, I am familiar with the manner and means commonly utilized regarding illegally possessed firearms by prohibited persons, to include convicted felons.

3. The information contained in this affidavit is based upon my personal knowledge derived from my participation in this investigation, review of records, and information provided by other law enforcement personnel.

4.  I make this affidavit in support of an application for issuance of a criminal complaint for Christopher BARR IV (BARR), charging him with knowingly possessing a firearm while being a convicted felon, in violation of 18 U.S.C. § 922(g)(1). This affidavit does not include all facts and evidence known to me but rather contains facts and evidence sufficient to support the issuance of a criminal complaint.

### Statutory Authority

5.  Based on the investigation, described more fully below, there is probable cause to believe that on or about September 9, 2025, BARR, a convicted felon, unlawfully possessed firearms, in violation of 18 U.S.C. § 922(g)(1).

6.  I know that 18 U.S.C. § 922(g)(1) provides that it is "unlawful for any person to…who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year…to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

7.  As part of the investigation, I have reviewed audio recordings from the ATF between a Confidential Informant (CI), an ATF Special Agent acting in an undercover capacity (UC), and BARR regarding a controlled purchase that would occur on September 9, 2025. I participated in the controlled purchase conducted on September 9, 2025, in a surveillance capacity. In addition, on September 9, 2025, I monitored an audio/video recording of the controlled purchase. I have listened to the majority of the recorded phone calls between the CI and BARR, as well as the recorded

2

calls between the UC and BARR, during the course of this investigation. I have also read most of the text message exchanges between the UC and BARR during the course of this investigation.

8.  In late August 2025, ATF Boston began an investigation into BARR for suspected violations of federal firearms laws following information received from a CI[1]. This information included the following:

> a. The CI has a past, personal relationship with BARR and knows BARR to be involved with narcotics and firearms, both currently and in the past. The CI reported that BARR has access to and can obtain firearms and had previously shown him/her two firearms over a video call. The CI knows BARR to have a criminal history and provided information about BARR recently dealing drugs and potentially violating probation conditions. The CI reported knowing that BARR resides in Jacksonville, Florida.

9.  The CI was instructed by ATF investigators to communicate with BARR using an ATF provided telephone line and contact BARR to ask about the firearms he showed, ask what he was trying to do with them, and introduce the UC as an associate

---

[1] The CI is cooperating for the purpose of seeking consideration towards charging and sentencing related to open charges for trafficking controlled substances in Massachusetts state court. The CI has a record of criminal convictions to include operating under the influence and possession of controlled substances. The CI has previously provided information regarding criminal activity that was later corroborated. The CI has also previously conducted a controlled purchase of evidence in conjunction with a separate federal investigation. Based on corroboration during this investigation, to include recordings, I believe that the CI's information is reliable and credible.

3

interested in the firearms. The CI then called BARR at phone number 904-XXX-0213[2] and reported that he/she asked about the above, to which BARR indicated he sold one firearm, had one, and could get more.

10.     On or about August 29, 2025, through instruction by ATF, the CI called BARR on a recorded phone line, with the purpose of inquiring again about the firearms and introducing the UC. Following the aforementioned call, BARR contacted the ATF UC.

### Arrangement of a Controlled Purchase of Firearms

11.     On or about August 30, 2025, the ATF UC called BARR at the above listed phone number. During the call, the UC referenced BARR having a few "things," referring to firearms, that maybe they could move on to make some money. The UC asked BARR if he was situated and trying to do something like that. In response, BARR acknowledged in the affirmative and explained that he had a "P22," went to get a box of bullets, had a "forty," and his friend had a "blackout" that he had to go pickup.[3]

12.     The UC explained that he was in Boston, but travels to Florida frequently, and prefers to have a transaction for multiple firearms to make the trip

---

[2] All known texts and calls between the CI/UC and BARR during the course of this investigation occurred via this same telephone number.

[3] Based on my training and experience, I believe these to be references to firearms. Individuals often refer to a firearm by its model or the caliber of ammunition in which it is designed to fire. In this instance, I believe "forty" and "blackout" to be referencing types/calibers of ammunition used to describe the type of firearm.

worth it. BARR asked how much the UC was willing to spend. BARR later stated "…I can get my hands on all that shit…" The UC then told BARR to let him know if BARR can acquire the firearms, then they can discuss pricing and a transaction. BARR informed the UC he is going to "…get on it" for at least five firearms.

13. Later the same date, the UC called BARR on the above listed telephone number and continued to discuss firearms and a future transaction of at least five to six firearms. The UC informed BARR the pistols could go for a "band" each.[4] BARR later confirmed that he knew for a fact he could get this for the UC. BARR also stated he needed to work on his car and does not have the "…shit on me…" to get them all at one time.[5]

14. On or about September 2, 2025, the UC placed a recorded phone call to BARR. During the call, the UC informed BARR that a transaction of five guns would work potentially the following week. BARR stated that everything was on the "west side" but that it was ready. The UC explained to BARR that each small gun can go for $1,200 and the AR rifle can go for $1,500 if he can make the transaction happen. In response, BARR stated that he would make it happen.

15. In conjunction with the aforementioned calls between the UC and BARR, the CI continued to have several recorded phone calls with BARR, some through direction by ATF. I have reviewed these calls. These calls between the CI and

---

[4] Based on my training and experience, I know that a "band" refers to $1,000 cash.

[5] The UC believed BARR was referring to money to acquire all the firearms for the transaction.

5

BARR at ATF's direction were largely for the purpose of facilitating or inquiring about the status of the potential future firearms transaction. In a call on or about September 1, 2025, the CI and BARR, in part, discussed the price difference for firearms between Boston and Florida. During a call on or about September 2, 2025, the CI asked BARR about his previous request to the UC to send money upfront and addressed concerns that BARR did not have the money to pay for the guns he indicated he could acquire. The CI also inquired into BARR to gauge the confidence and logistics of the potential controlled purchase on behalf of ATF. During a call between the CI and BARR on or about September 4, 2025, BARR ensured that the deal was secured and set-up.

16. On or about September 5, 2025, the UC placed a recorded phone call to BARR. During the call, BARR asked when the UC would travel down, to which the UC replied the following Tuesday, referring to September 9, 2025.

### Text Messages between BARR and the UC

17. Between approximately August 29, 2025, and August 31, 2025, the UC and BARR engaged in a text message thread regarding the planned controlled purchase of firearms. Screenshots from this text message exchange are below, in chronological order:











18. Additional text messages were exchanged between the UC and BARR until September 9, 2025. Below are excerpts of text messages exchanged between the UC and BARR. I have not included the entire conversation, just portions of it through screenshots to display the nature of the conversation. Communications in the left screenshot occurred on Wednesday, September 3, 2025. The middle screenshot occurred on Thursday, September 4, 2025. The right screenshot occurred on Friday, September 5, 2025, and Sunday, September 7, 2025.

  

**September 9, 2025 – Purchase of Firearms**

19. On September 9, 2025, personnel from the ATF Jacksonville and Boston Field Offices, along with the Jacksonville Sheriff's Office (JSO), participated in an operation to purchase firearms from BARR. During the operation, the UC purchased three firearms, magazines, and assorted ammunition from BARR. Prior to the

9

purchase, the UC had several phone calls and text messages with BARR via his previously mentioned phone number. BARR and the UC agreed to meet in the area of a local business on Merchant's Way in Jacksonville, Florida to conduct the transaction.

20. The UC waited for BARR's arrival in the area of the business. Surveillance was maintained on the UC before, during, and after the purchase. BARR arrived at the meeting location in a Dodge Challenger bearing Florida registration 02AKUV. After locating the UC, BARR exited his vehicle and entered the UC's vehicle via the passenger side door. BARR retrieved a revolver from his person, and the other two firearms, magazines, and ammunition from bags he brought. In exchange for these three firearms, the UC provided BARR with $3,600 in ATF funds. Shortly after BARR finished counting the money and the UC took possession of the firearms, the transaction ended. Prior to leaving, BARR explained to the UC that he could acquire additional firearms that day to sell. Ultimately, later on September 9, 2025, BARR was taken into custody during a pre-planned arrest operation by ATF and JSO.

21. The purchased firearms and ammunition were further identified as follows:

- A Walther, model P22, .22 caliber, bearing serial number WA113185
- A Taurus, model Ultra-Lite revolver, bearing serial number MW15050.

- A Smith & Wesson, model M&P-15, bearing serial number SX20550.
- Assorted ammunition loaded in two magazines.

22. I conducted a records check through the National Crime Information Center (NCIC) on the serial number of each of the firearms. The search revealed that none of them were reported stolen.

### Further Investigation

23. I have spoken with ATF Special Agent John Christensen, who is a certified interstate nexus expert and is trained to examine firearms to determine their origin and status as to travel in interstate and/or foreign commerce. Special Agent Christensen examined photographs of each of the above firearms and determined that all three of the firearms listed in this affidavit did travel in/affect interstate commerce.

24. A query of the law enforcement database NCIC revealed BARR is a multi-time convicted felon for, including but not limited to, possession of heroin on or about August 17, 2021.

11

## CONCLUSION

Based on the facts and observations contained in this Affidavit, there is probable cause to believe that Christopher BARR IV, a convicted felon, unlawfully possessed firearms, in violation of 18 U.S.C. § 922(g)(1).

Respectfully submitted,

_____
Christian Van Kleeff, Special Agent
Bureau of Alcohol, Tobacco,
Firearms and Explosives

Subscribed and sworn to before me, on
this 10th day of September, 2025.

_____
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE